**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

──────────

**No. 23-4249**

──────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JAROHN PARHAM,

Defendant – Appellant.

──────────

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.  Raymond A. Jackson, Senior District Judge.  (4:21-cr-00075-RAJ-LRL-1)

──────────

Argued:  March 22, 2024                    Decided:  February 26, 2025

──────────

Before NIEMEYER, KING, and BENJAMIN, Circuit Judges.

──────────

Reversed, vacated and remanded with instructions by published opinion.  Judge Benjamin wrote the opinion, in which Judge Niemeyer and Judge King joined.

──────────

**ARGUED:**  Geremy C. Kamens, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Daniel J. Honold, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:**  Patrick L. Bryant, Assistant Federal Public Defender, Alexandria, Virginia, Kirsten R. Kmet, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellant.  Jessica D. Aber, United States Attorney, Richmond, Virginia, Peter G. Osyf, Assistant United States Attorney, OFFICE OF THE UNITED

STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

DEANDREA GIST BENJAMIN, Circuit Judge:

Jarohn Parham appeals the 84-month sentence the district court imposed after he pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He argues that the district court erred in calculating his Sentencing Guidelines range because it incorrectly concluded that his prior conviction for Virginia common law robbery ("Virginia robbery"), under Va. Code § 18.2-58 (1978), qualified as a conviction for a crime of violence for purposes of a sentencing enhancement under the U.S. Sentencing Guidelines Manual §§ 2K2.1(a)(4)(A), 4B1.2(a).  He argues that our court's precedent establishes that Virginia robbery can be committed by threatening to accuse the victim of having engaged in sodomy, and therefore disqualifies it as a crime of violence because it criminalizes conduct broader than generic robbery.  We agree with Parham and reverse the judgment of the district court, vacate Parham's sentence, and remand to the district court for resentencing.

Parham also argues that his prior conviction under Virginia's use of a firearm during the commission of a robbery ("Virginia use of a firearm"), under Va. Code § 18.2-53.1 (1994), is not a crime of violence.  We are not satisfied that the district court directly addressed this issue, so we instruct the district court to consider the issue in the first instance on remand.

I.

A.

3

In early 2021, officers with the Newport News, Virginia police department observed Parham driving a vehicle with an expired registration sticker. [J.A. 23]. The officers initiated a traffic stop. [J.A. 23]. As Parham stopped the vehicle, officers observed him reach down towards the center console. [J.A. 23]. Upon approaching the vehicle, they again saw Parham reach towards the floorboard near the center console. [J.A. 23]. An officer then observed a .25 caliber semi-automatic pistol tucked under the plastic between the floorboard and the center console. [J.A. 23]. The police seized the pistol and arrested Parham. [J.A. 23].

A federal grand jury indicted Parham for possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1), and he pled guilty to this charge without a plea agreement but with a stipulated statement of facts. [J.A. 7, 11-21, 23-25]. Parham admitted he "knew that he had been previously convicted of a felony because in 2003 he was sentenced to 15 years['] incarceration for [r]obbery . . . and his right to possess a firearm had not been restored." J.A. 24.

B.

i.

Before sentencing, a probation officer prepared a Presentence Investigation Report ("PSR") that calculated Parham's base offense level at 20 under U.S.S.G. § 2K2.1(a)(4)(A), which applies when "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). [J.A. 103 (filed under seal)]. An offense is a "crime of violence" under § 4B1.2(a) of the Sentencing Guidelines if it is

4

punishable by imprisonment for a term exceeding one year and either has as an element "the use, attempted use, or threatened use of physical force against the person of another," ("the elements clause" or "the force clause") or "is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of [certain firearms or explosives]" ("the enumerated offenses clause"). § 4B1.2(a)(1–2); *see* § 2K2.1 cmt. n.1 (providing that "[f]or the purposes of this guideline," the term " 'crime of violence' has the meaning given . . . in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2").

The PSR qualified Parham's 2003 Virginia felony convictions for robbery and for use of a firearm in the commission of that robbery as crimes of violence.[1] J.A. 118–20. Four levels were added under § 2K2.1(b)(6)(B) because Parham used or possessed a firearm or ammunition in connection with another felony offense. [J.A. 103]. Parham was then given a 3-level reduction under § 3E1.1 for timely acceptance of responsibility, for a total offense level of 21. J.A. 103. Parham had 14 criminal history points which placed him in criminal history category VI. [J.A. 109]. This criminal history category, combined

---

[1] The PSR also noted Parham's 2021 convictions for Virginia robbery using a firearm and Virginia use of a firearm, and qualified those as crimes of violence as well. [J.A. 108]. But Parham committed these offenses after the March 2021 conduct that gave rise to this case. [J.A 69-70]. He also committed them after the Virginia legislature amended its robbery statute to break out various forms of robbery into distinct subsections with various elements and punishments. *See* Va. Code § 18.2-58 (2021). The 2021 version of the statute has not been challenged on appeal. Thus, these convictions are not relevant to this appeal.

with his total offense level of 21, provided for a Guidelines range of 77 to 96 months' imprisonment. [J.A. 113].

ii.

Parham objected to the PSR's calculation of his Guidelines range. [J.A. 38-43]. He argued that his base offense level should be 14 under § 2K2.1(a)(6)(A)[2] and that he should not have received a criminal history point for his 2003 Virginia robbery conviction because, under this court's decision in *United States v. White*, 24 F.4th 378 (4th Cir. 2022) ("*White II*"), it is not a crime of violence under § 4B1.2(a)(1). [J.A. 38-43]. In *White II*, this court held that since the Virginia Supreme Court found that Virginia robbery can be committed by threatening to accuse the victim of engaging in sodomy, it "does not require as an element the actual, attempted, or threatened use of physical force." *Id*. at 381 (citation omitted). Parham argued that because Virginia robbery does not categorically require the use, attempted use, or threatened use of force, it is broader than generic robbery. [J.A. 38]. Parham asserted the correct Guidelines range was 41 to 51 months and requested a 32-month sentence. [J.A. 38, 44-45].

The Government responded that *White* was limited to cases involving the Armed Career Criminals Act ("ACCA") and that while Virginia robbery did not qualify as a "crime of violence" under the elements clause, it qualified under the enumerated offenses clause because Virginia robbery matched the generic robbery offense. [J.A. 30-31]. It also argued, in the alternative, that because Parham's felony conviction for Virginia use of a

---

[2] A base offense level of 14 applies if the defendant was a "prohibited person at the time the defendant committed the instant offense." § 2K2.1(a)(6)(A).

6

firearm qualified as a crime of violence, it independently justified the base offense level of 20. [J.A. 50-51]. The Government requested a 78-month sentence. [J.A. 31].

At sentencing, in addition to the objection to the robbery conviction, Parham disputed that Virginia use of a firearm was a valid crime of violence because "Virginia case law and the statutory text establish that a violation of that particular section . . . requires neither the use of force against the person or another nor that the object of a threatened display of a firearm must be someone other than the defendant." [J.A. 64].

iii.

The district court overruled Parham's objections and found that Virginia robbery was a crime of violence at the time Parham was convicted of the offense in 2003. [J.A. 64-66]. The court read out the 1978 version of the statute:

> If any person commits robbery by partial strangulation, or suffocation, or by striking or by beating, or by other violence to the person, or by assault or otherwise putting a person in fear of serious bodily harm, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony and shall be punished by confinement in a state correctional facility for life or any term not less than five years.

Va. Code § 18.2-58. [J.A. 65].

The court noted that "[Parham] used a firearm in the commission of this offense back in 2003." J.A. 65. It found that the Virginia robbery offense met the generic definition of robbery, but acknowledged that "[there is] a lot of dispute regarding whether robbery is a crime of violence and there have been some differences of opinion by judges on this issue, but I think that the United States Court of Appeals is going to have to resolve this issue [.]" J.A. 65. That said, the court continued, "it's appropriate to go back to the

7

crime on which the defendant was convicted back in 2003 notwithstanding the fact that the Supreme Court of Virginia has taken a different view of robbery as a crime of violence." J.A. 65. Relying on its finding that Virginia robbery is a crime of violence, the court also overruled Parham's objection to the one criminal history point attributed to him for this conviction. [J.A. 66].

The court thus found Parham's Guidelines range was 77 to 96 months and it imposed a sentence of 84 months' imprisonment. [J.A. 66, 84, 90]. Parham timely appealed and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II.

The primary issue presented is whether the district court erred by applying an enhanced base offense level of 20 under § 2K2.1(a)(4)(A) grounded in its determination that Parham's 2003 felony conviction for Virginia robbery qualified as a felony conviction for a "crime of violence," as defined in § 4B1.2(a).

## A.

We review criminal sentences for reasonableness using an abuse of discretion standard. *United States v. Morehouse*, 34 F.4th 381, 387 (4th Cir. 2022). The court considers whether the district court committed a significant procedural error, including improperly calculating the Sentencing Guidelines range. *United States v. Allmendinger*, 706 F.3d 330, 340 (4th Cir. 2013). Whether a prior conviction is a "crime of violence" is a question of law that this court reviews de novo. *United States v. Winston*, 850 F.3d 677, 683 (4th Cir. 2017), *abrogated on other grounds by United States v. Williams*, 64 F.4th

8

149, 152 n.3 (4th Cir. 2023). "[A] district court necessarily abuses its discretion when it makes an error of law." *United States v. Srivastava*, 540 F.3d 277, 287 (4th Cir. 2008) (first citing *Koon v. United States*, 518 U.S. 81, 100 (1996); and then citing *United States v. Ebersole*, 411 F.3d 517, 526 (4th Cir. 2005)). If we find a district court committed significant procedural error, we must vacate the sentence and remand for resentencing. *Allmendinger*, 706 F.3d at 340.

B.

We apply the categorical approach to determine whether Virginia robbery is a crime of violence under the Guidelines. *See Descamps v. United States*, 570 U.S. 254, 257 (2013). This requires us to look only to the statutory elements of the offense, and not to the particular facts of the case. *United States v. Simmons*, 917 F.3d 312, 317 (4th Cir. 2019) (citation omitted).

Our court has explained this approach as it relates to the enumerated offenses clause:

Application of this approach generally involves a four-step process. First, we identify which of the listed crimes in the Commentary to the Guideline ("the Guideline crime") most closely approximates the prior state crime. *United States v. Cabrera-Umanzor*, 728 F.3d 347, 352 (4th Cir. 2013). Second, we identify the "generic definition" of the Guideline crime. *United States v. Bonilla*, 687 F.3d 188, 192 (4th Cir. 2012). Third, we compare the elements of the prior state crime to those in the generic definition of the Guideline crime. *Id.* If the elements of the prior state crime "correspond in substance" to those of the Guideline crime, then the prior state crime is a crime of violence and our inquiry comes to an end. *Cabrera-Umanzor*, 728 F.3d at 350 (citations and modifications omitted). If, however, the elements do not correspond in substance, then we proceed to the fourth step, which involves an assessment of whether the scope of conduct criminalized by the prior state crime is categorically overbroad when compared to the generic definition of the Guideline crime. *United States v. Rangel-Castaneda*, 709 F.3d 373, 377-79 (4th Cir. 2013) (citation omitted). A prior state offense

9

whose elements criminalize a broader scope of conduct than the Guideline
crime is *not* categorically a crime of violence.

*United States v. Perez-Perez*, 737 F.3d 950, 952–53 (4th Cir. 2013) (footnote omitted).

Under the categorical approach, a prior offense qualifies as a crime of violence only if all the criminal conduct covered by a statute matches or is narrower than the generic crime of violence definition. *See United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012), *abrogated on other grounds by United States v. Allred*, 942 F.3d 461 (4th Cir. 2019). Thus, we must "focus on 'the minimum conduct necessary for a violation' " of the statute. *United States v. Gardner*, 823 F.3d 793, 803 (4th Cir. 2016) (quoting *Castillo v. Holder*, 776 F.3d 262, 267 (4th Cir. 2015)), *abrogated on other grounds by United States v. White*, 987 F.3d 340 (4th Cir. 2021). If the most innocent or minimum conduct penalized by a statute does not constitute a crime of violence, then the statute categorically fails to qualify as a crime of violence. *See Descamps*, 570 U.S. at 257 ("The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense.").

## C.

The district court ruled that Virginia robbery is a crime of violence under the enumerated offenses clause in § 4B1.2(a)(2) because it lists "robbery" as an enumerated "crime of violence." [J.A. 64-66]. Parham argues this determination was erroneous because Virginia robbery is broader than generic robbery in that it can be committed by conduct that is more innocent than the generic offense of robbery. Thus, his 2003

10

conviction cannot qualify as a crime of violence under the enumerated offenses clause.  For the reasons stated below, we agree with Parham.

Some background is in order.  Parham relies on our court's decisions in *White II* and *Williams*, 64 F.4th at 149, in making his argument that his Virginia robbery conviction cannot qualify as a crime of violence under the Sentencing Guidelines.  In our court's first decision in *White*, the defendant argued that Virginia robbery does not satisfy the elements clause of the ACCA because a person can commit that offense "by threatening to accuse the [robbery] victim of having committed sodomy."  *United States v. White*, 987 F.3d 340, 341–42 (4th Cir. 2021) ("*White I*").  Finding no precedent on this issue, the court certified to the Supreme Court of Virginia the question of whether Virginia robbery can be committed in such a way. *Id*. at 341.  The Supreme Court of Virginia answered in the affirmative and held that "one who successfully obtains money or any valuable property from the presence of a victim by threatening to publicly accuse the victim of [having committed sodomy] . . . has committed [Virginia] robbery."  *White v. United States*, 863 S.E.2d 483, 486 (Va. 2021).

Our court then returned to the issue in *White II* and held that Virginia robbery does not qualify as a "violent felony" under the ACCA's force clause because it "can be committed by threatening to accuse the victim of having committed [sodomy] and, thus, does not have as a required element 'the use, attempted use, or threatened use of physical force against the person of another.' "  24 F.4th at 382.

Then came our court's decision in *Williams* where "the Government argue[d] that *White* [*II* was] not controlling because Williams was convicted and sentenced under a

11

version of the Virginia robbery statute, Va. Code § 18.2-58, that clearly excluded the sodomy-threat theory." 64 F.4th at 153. Our court rejected that argument and held that Williams and the defendant in *White II* were convicted under the same 1975 version of the robbery statute; therefore, *White II* controlled and foreclosed the Government's argument that Virginia robbery categorically requires the use, attempted use, or threatened use of force. *See id.* at 153–56. Therefore, it affirmed the conclusion in *White II* that Virginia robbery is not a violent felony under the ACCA. *See id.* at 156.

Here, the Government conceded to the district court that after *White II*, Virginia robbery would not qualify as a crime of violence under the elements clause in § 4B1.2(a)(1). The Government is correct because "[w]e rely on precedents evaluating whether an offense constitutes a 'crime of violence' under the Guidelines interchangeably with precedents evaluating whether an offense constitutes a 'violent felony' under the [ACCA.]" *United States v. Montes-Flores*, 736 F.3d 357, 363 (4th Cir. 2013), *superseded on other grounds by statute*, S.C. Code Ann. §§ 6-3-29, 16-3-600. The definition of the elements clauses under § 4B1.2(a)(1) and the ACCA are the same.[3] So because *White II* and *Williams* established that Virginia robbery does not qualify as a "violent felony" under the elements clause of the ACCA, it similarly would not qualify as a "crime of violence" under the elements clause in § 4B1.2(a)(1).

---

[3] The ACCA defines "violent felony" as any felony that (i) "has as an element the use, attempted use, or threatened use of physical force against the person of another" or (ii) "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]" 18 U.S.C. § 924(e)(2)(B).

12

Instead, the Government argued it did not have to satisfy the elements clause because "robbery" is listed in the enumerated offenses clause in § 4B1.2(a)(2) and not in the enumerated offenses clause of the ACCA.[4]   But, as discussed below, our court's holdings in *White II* and *Williams* show why Virginia robbery covers a broader range of conduct than generic robbery.

D.

There is ultimately no categorical match between Virginia robbery, Va. Code § 18.2-58, and § 4B1.2(a)(2)'s enumerated offense of "robbery."  The Guidelines do not define "robbery," so we compare the elements of Virginia robbery with those of "generic" robbery, or the "generally accepted contemporary meaning" of the offense.  *Taylor v. United States*, 495 U.S. 575, 596 (1990).  Our court has already defined "generic" robbery as "the misappropriation of property under circumstances involving *immediate danger to the person*[.] "  *United States v. Gattis*, 877 F.3d 150, 158 (4th Cir. 2017) (emphasis added). We explained that "the immediate danger" element in that definition is "satisfied by the taking of property from a person or a person's presence by means of force or putting in fear." *Id*. at 157 (quotation marks omitted).  The crime of "larceny" becomes robbery "in the generic sense only when the offender takes property by using force or by threatening immediate physical harm." *Id*.  As for threatening immediate physical harm, "such a threat may be express or implicit, but it must be sufficient to induce the victim to part with the

---

[4] The Government does not advance this argument on appeal.  Instead, it argues that we need not reach this issue because Parham's conviction for Virginia use of a firearm is a crime of violence for purposes of the enhancement.

property." *Id.* (emphasis omitted). As for the amount of force that makes the crime robbery, it has to be enough force to overcome the victim's resistance or force that is more than necessary to simply remove an item from the victim's grasp. *Id.*

Next, we compare this meaning of generic robbery with the state's definition of common law robbery. The Virginia robbery statute, Va. Code § 18.2-58, prescribes only the degrees of punishments for robbery, not its elements. The Supreme Court of Virginia has thus defined Virginia robbery as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." *Williams*, 64 F.4th at 153–54 (citing *Durham v. Commonwealth*, 198 S.E.2d 603, 605 (Va. 1973)).

The Virginia Court of Appeals has adopted the view that the offense of robbery " 'is not related to the force used on the object taken but to the force or intimidation *directed at the person of the victim.*' " *Winn v. Commonwealth*, 462 S.E.2d 911, 912 (Va. App. 1995). Violence " 'need only be slight, for anything which calls out resistance is sufficient[.]' " *Maxwell v. Commonwealth*, 183 S.E. 452, 454 (Va. 1936) (quoting *Houston v. Commonwealth*, 12 S.E. 385, 387 (Va. 1890)). The Virginia Court of Appeals has explained that "[i]ntimidation results when words or conduct of the accused exercise such domination and control over the victim as to overcome the victim's mind and overbear the victim's will, placing the victim in fear of bodily harm." *Jones v. Commonwealth*, 496 S.E.2d 668, 740 (Va. App. 1998) (quoting *Bivens v. Commonwealth*, 454 S.E.2d 741, 742 (Va. App. 1995)).

14

The Virginia Supreme Court then explained in *White* that the "putting in fear" method of committing robbery can occur without the use, attempted use, or threatened use of force by threatening to accuse the victim of engaging in sodomy. 863 S.E.2d at 487. This type of threat constitutes "constructive violence" and satisfies the intimidation means of committing Virginia robbery. *Id*. at 484. In other words, threatening an accusation of sodomy is the legal equivalent of putting someone in fear of bodily harm.

Threatening to accuse someone of having committed sodomy does not involve the kind of "immediate danger" *Gattis* requires. 877 F.3d at 156–57. *White II* and *Williams* confirmed that threatening to accuse someone of sodomy does not require violence or the threatened use of violence. As stated above, generic robbery must include enough force to overcome the victim's resistance or force more than necessary to simply remove an item from the victim's grasp. No physical force is required under the sodomy-threat theory. It is simply a threat to tell someone else that the victim engaged in sodomy, which is effectively an attack on one's status as opposed to a physical assault. There is similarly no immediate physical harm to a sodomy-threat victim. The victim acts based on the concern that the perpetrator will levy this accusation against her at some point in the future.

Therefore, because Virginia robbery can be committed by conduct broader than the generic form of robbery, it is not a crime of violence under the enumerated offenses clause of the Guidelines. *See* § 4B1.2(a)(2). The district court erred in treating Parham's 2003

15

Virginia robbery conviction as a crime of violence, and as such, incorrectly applied an enhanced base offense level under U.S.S.G. § 2K2.1(a)(4)(A) on this ground.[5]

## III.

Since we have concluded that Parham's 2003 Virginia robbery conviction does not qualify as a crime of violence, the accuracy of the district court's Guidelines calculation depends on the classification of Parham's Virginia conviction under Va. Code § 18.2-53.1 for use of a firearm during a robbery. *See* § 2K2.1(a)(4) (providing for a sentencing enhancement if "the defendant committed any part of the instant offense subsequent to sustaining *one* felony conviction of . . . a crime of violence") (emphasis added). The Government argues the offense qualifies as a valid crime of violence and meets both the force clause and the enumerated offenses clause under § 4B1.2. Thus, the district court correctly calculated Parham's Guidelines range.

But before we can reach the merits of that issue, a lingering question exists as to whether the district court made a clear finding whether Parham's conviction for Virginia use of a firearm qualified as a crime of violence. The Government says it did; Parham says it did not. For the below reasons, we find the district court did not address the issue.

---

[5] For the same reason we find the district court erred in enhancing Parham's base offense level because Virginia robbery is not a valid crime of violence, it was also error for that conviction to have earned a criminal history point under § 4A1.1, which applies up to three points "for each prior sentence resulting from a conviction of a crime of violence." U.S.S.G. § 4A1.1(d). But Parham conceded below that removing the applied point only brings his criminal history points down to 13, which keeps him at criminal history category IV. The error is therefore harmless.

16

At sentencing, the district court explicitly cited to Va. Code § 18.2-58, the Virginia robbery penalty statute, and found that it was a crime of violence when Parham was convicted in 2003. [J.A. 64]. After it read the statute verbatim, the court then said: "The defendant used a firearm in the commission of *this offense* back in 2003. The Court believes *this statute* certainly meets the generic definition of 'robbery.' Robbery is an enumerated offense under the Guidelines." J.A. 65. (emphasis added). The court then recognized that district courts have come to different conclusions about "whether robbery is a crime of violence." *Id*.

The Government believes "this statute" refers to the use of a firearm statute, § 18.2-53.1, and the court thus squarely ruled that the statute was a valid crime of violence under the enumerated offenses clause. We reject this contention. The court was referring to the robbery statute, not the use of a firearm statute. It cited, then quoted, the robbery penalty statute. The court referred to "this offense" and "this statute," directly concluded that robbery (not use of a firearm) is an enumerated offense under the Guidelines, and then addressed other courts' decisions about robbery's status as a crime of violence. It is clear to us that the district court meant that Parham used a firearm in the commission of the offense it had spent paragraphs just talking about—robbery. Not use of a firearm during the robbery.

Both parties ultimately assert that even if we were to find that the district court did not address whether use of a firearm is a crime of violence under the Sentencing Guidelines, the issue is a question of law we can resolve on our own. But because we are "mindful that we are a court of review, not of first view," we decline the invitation to address this question

17

"without [having had] the benefit of district court consideration." *Lovelace v. Lee*, 472 F.3d 174, 203 (4th Cir. 2006) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)). Therefore, we leave to the district court to consider on remand the question of whether Virginia's use of a firearm offense under § 18.2-53.1 is a crime of violence under the Sentencing Guidelines.

IV.

For the reasons stated above, the judgment of the district court is

*REVERSED*, *VACATED AND REMANDED WITH INSTRUCTIONS.*